$350





**FILED**
SEP 30 2010
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDREW BORSCHELL** | Case Number **10 5119** |
| Plaintiff | |
| vs. | CIVIL COMPLAINT |
| **REGIONAL ADJUSTMENT BUREAU, INC.** | JURY TRIAL DEMANDED |
| Defendant | |

## COMPLAINT AND JURY DEMAND

**COMES NOW,** Plaintiff, Andrew Borschell, by and through his undersigned counsel, Bruce K. Warren, Esquire and Brent F. Vullings, Esquire of Warren & Vullings, LLP, complaining of Defendant and respectfully avers as follows:

### I.   INTRODUCTORY STATEMENT

1.   Plaintiff, Andrew Borschell, is an adult natural person and brings this action for actual and statutory damages and other relief against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices, the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.4 ("PFCEUA) and the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1-201-9.3 ("UTPCPL") which



prohibits debt collectors and original creditors from engaging in abusive, deceptive and unfair practices.

## II.  JURISDICTION

2. Jurisdiction of this court arises under 15. U.S.C. § 1692k(d) and 28 U.S.C. §1337.

3. Venue in this District is proper in that the Plaintiff resides here.

## III.  PARTIES

4. Plaintiff, Andrew Borschell, is an adult natural person residing at 4621 Almond Street, Philadelphia, PA 19137. At all times material and relevant hereto, Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a (2).

5. Defendant, Regional Adjustment Bureau, Inc. at all times relevant hereto, is and was a Corporation engaged in the business of collecting debt in this Commonwealth with a principal place of business located at 7000 Goodlett Farms Parkway, Memphis, TN 38016.

6. Defendant is engaged in the collection of debts from consumers using the telephone and mail. Defendant regularly attempts to collect consumer debts alleged to be due to another. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

## IV.   FACTUAL ALLEGATIONS

7. At all times pertinent hereto, Defendant was hired by College Loan Card Services to collect a debt relating to consumer credit card purchases that were allegedly originally owed to College Loan Card Services.

8. Plaintiff received an initial dunning letter dated June 17, 2010. See a copy of the letter appended hereto and marked "**EXHIBIT A**".

9. On July 16, 2010 Plaintiff placed a phone call to Defendant in an attempt to discuss a potential reduced settlement amount that the letter detailed.

10. Plaintiff spoke with an unnamed male agent who quoted a settlement figure somewhat lower than the $505.70 Defendant is attempting to collect, but Plaintiff was denied a request to have the settlement offer presented to him in writing.

11. Contrary to Plaintiff's request for Defendant to provide written confirmation of the discussed settlement offer, the male agent demanded Plaintiff's bank account information to establish a post-dated check which would be 'deposited' on July 30, 2010.

12. Plaintiff explained to the male agent that he did not feel comfortable giving his bank account information without a written statement that said the settlement amount would be honored.

13. Defendant's agent rudely stated that if anyone should feel uncomfortable it should be his company because Plaintiff is the one who didn't pay his debt to begin with.

14. Plaintiff again reiterated that he would like the settlement offer in writing, but Defendant's agent stated that Plaintiff's account would be marked as a 'refusal to pay' and ended the call.

15. Plaintiff received a call on the morning of August 25, 2010 from Defendant's agent, "Tiffany Harper."

16. Plaintiff established tentative settlement arrangements with "Tiffany Harper" where an e-mail would be sent to Plaintiff confirming the agreement.

17. Plaintiff's received an e-mail from "Tiffany Harper" shortly after the phone call ended. See a copy of the e-mail appended hereto and marked "**EXHIBIT B**".

18. Upon receipt of the e-mail, Plaintiff responded to the sender, "Tiffany Harper", asking if e-mail would be a proper venue to discuss potential issues with the settlement offer, specifically trade line deletion and a revised settlement date, but never received a response.

19. Plaintiff returned a call to Defendant on August 31, 2010 in response to a voicemail that was left on the answering machine of his home telephone earlier that same day.

20. During the call, Plaintiff spoke with an unnamed female agent of Defendant and discussed two concerns with the settlement e-mail.

21. Plaintiff first asked Defendant's agent if the settlement offer could be revised with a later settlement date that did not represent the exact day of his next paycheck.

22. Plaintiff also asked if the compromised settlement offer could include a clause which stated Defendant would request deletion of their trade line with TransUnion.

23. Plaintiff was then told by Defendant's agent that Defendant does not report to the credit bureaus, despite Plaintiff's insistence that it does appear on his credit.

24. Plaintiff was then told that upon payment of the debt, he would be provided with a letter, but was not told who the letter would come from, which said the account was "taken care of" and Plaintiff had the option, upon his request, to have the trade line removed.

25. The call was discontinued with Plaintiff affirming that payment would be made when the requested settlement letter was provided.

26. Plaintiff returned a second call to Defendant on September 2, 2010 in response to another voicemail that was left on the answering machine of his home telephone earlier that same day.

27. Plaintiff spoke with an unnamed male agent of Defendant and restated the basis of his previous call to Defendant regarding concerns with the settlement e-mail.

28. Plaintiff was again told by Defendant's agent that Defendant "don't add or delete anything from your credit."

29. Defendant's agent was adamant that Defendant does not report to the credit bureaus, so Plaintiff mentioned he would check again and call back as a courtesy to Defendant.

30. Plaintiff returned a call to Defendant as promised with his TransUnion credit report available, and explained to the same unnamed male agent of Defendant that upon further review, Defendant has in fact reported the account.

31. See a copy of Defendant's trade line appended hereto and marked **"EXHIBIT C"**.

32. Plaintiff also explained that the trade line for their client was separate and individual of Defendant's reporting. See a copy of the original creditor's trade line appended hereto and marked "**EXHIBIT D**".

33. Defendant's agent expressed shock and told Plaintiff that his account was the first scenario upon which he has seen any of Defendant's accounts reported to a credit bureau.

34. Defendant's agent then told Plaintiff that if he paid the debt, he could "contact College Loan Card Services and you'll have the option to just say 'take it off'."

35. Defendant's agent maintained the position that Defendant does not report to the credit bureaus and in the closing minutes of the phone call stated, "we didn't put that there, it's something that came straight from CLC."

36. Plaintiff returned another call to Defendant on September 2, 2010 in response to a third voicemail that was left on the answering machine of his home telephone earlier that same day.

37. Upon answering the call, an unnamed female agent of Defendant explained to Plaintiff that she was calling to follow up on the status of his account.

38. Plaintiff calmly reiterated his request regarding the settlement letter.

39. The female agent then told Plaintiff that Defendant does not report to the credit bureaus, and after Plaintiff explained that he was certain that Defendant has done so, Defendant's agent barked, "No, we don't!"

40. Defendant's agent then told Plaintiff, "because we have held the account for too long, and although we have sent you a settlement letter, you just keep going in circles with us so I am going to put a manager on the phone."

41. The call was then transferred to "Ms. Harris" who the previous agent stated is in management.

42. "Ms. Harris" was adamant, bordering on condescending, about the fact that no trade line has been reported to any credit bureau.

43. "Ms. Harris" went on to tell Plaintiff, "Well, the only thing I can tell you is if you want to pay your debt you can, but otherwise we will have to report this as a direct refusal to pay."

44. Plaintiff assured "Ms. Harris" that he was not refusing to pay and would pay the debt immediately if given the opportunity and something in writing setting forth the payment agreement.

45. "Ms. Harris" then snidely remarked to Plaintiff, "Well sir, this is your debt, whether or not you pay it, it is still going to be there, we aren't going to continue to call you over $505.00."

46. Plaintiff was told that the reason he would no longer receive phone calls from Defendant is because he was "wasting their time."

47. Plaintiff was also told, "You don't want to pay, you want to do what you want to do, that is why your account is in collections now, sir."

48. "Ms. Harris" then terminated the call.

49. Defendant's only letter to Plaintiff dated June 17, 2010 threatened, "Furtherer collection efforts could become necessary in the event that this account remains unpaid or arrangements for payment have not been accomplished."

50. Upon information and belief, Defendant never had any intention of pursuing "furtherer collection efforts" and only included that statement with the intent to annoy, abuse and harass Plaintiff.

51. Furthermore, upon information and belief, Defendant's agents were fully aware that Plaintiff's account was placed for collection in January 2010 and reported to TransUnion in March 2010, and instead attempted to shroud this fact with the intent to annoy, abuse and harass Plaintiff by continuously communicating false credit information.

52. The Defendant acted in a false, deceptive, misleading and unfair manner by threatening to take action that it did not intend to take for the purpose of coercing Plaintiff to pay the debt.

53. Defendant knew or should have known that their actions violated the FDCPA. Additionally, Defendant could have taken the steps necessary to bring their and their agent's actions within compliance of the FDCPA, but neglected to do so and failed to adequately review those actions to insure compliance with the law.

54. At all times pertinent hereto, Defendant were acting by and through its agents, servants and/or employees, who were acting with the scope and course of their employment and under the direct supervision and control of Defendant herein.

55. At all times pertinent hereto, the conduct of Defendant as well as its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiff herein.

## COUNT I – FDCPA

56. The above paragraphs are hereby incorporated herein by reference.

57. At all times relevant hereto, Defendant was attempting to collect an alleged debt which was incurred by the Plaintiff for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

58. The foregoing acts and omissions constitute violations of the FDCPA, including but not limited to, violations of 15 U.S.C. § 1692:

| | |
|---|---|
| § 1692d: | Any conduct that natural consequence of which is to harass, oppress or abuse any person |
| § 1692d(2): | Profane language or other abusive language |
| § 1692e: | Any other false, deceptive or misleading representation or means in connection with the debt collection |
| § 1692e(5): | Threaten to take any action that cannot legally be taken or that is not intended to be taken |
| § 1692e(8): | Threatens or communicates false credit information |
| § 1692e(10): | Any false representation or deceptive means to collect a debt or obtain information about a consumer |
| § 1692f: | Any unfair or unconscionable means to collect or attempt to collect the alleged debt |
| § 1692f(2): | Attempted or solicited postdated check by more than 5 days without 3 business days written notice of intent to deposit |

**WHEREFORE**, Plaintiff respectfully requests that this court enter judgment in his favor and against Regional Adjustment Bureau, Inc. for the following:

a. Actual damages;

b. Statutory damages pursuant to 15 U.S.C. §1692k;

c. Reasonable attorney's fees and costs of suit pursuant to 15 U.S.C. §1692k; and

d. Such addition and further relief as may be appropriate or that the interests of justice require.

## COUNT II

## VIOLATIONS OF PENNSYLVANIA FAIR CREDIT EXTENSION UNIFORMITY ACT
## (FCEUA, 73 Pa. C.S. § 2270.1 et seq.)

59. Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs.

60. The collection of a debt in Pennsylvania is proscribed by the Fair Credit Extension Uniformity Act at 73 Pa. C.S. § 2270.1 et seq., ("FCEUA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 Pa. C.S 201-1 et seq. ("UTPCPL"). Defendant is a debt collector pursuant to 73 Pa. C.S. § 2270.3.

61. The alleged debt Defendant was attempting to collect is a debt as defined by 73 Pa. C.S. § 2270.3.

62. The FCEUA proscribes, <u>inter alia</u>, engaging in any false, misleading or deceptive representations when attempting to collect a consumer debt.

63. The actions of Defendant, as aforesaid, constitute false, misleading or deceptive representations.

64. Violations of the FDCPA are <u>per se</u> violations of the FCEUA and the UTPCPL.

65. As a direct and proximate result of the said actions, Plaintiff has suffered financial harm.

66. By virtue of the violations of the law as aforesaid, and pursuant to the FCEUA and UTPCPL, Plaintiff is entitled to an award of actual damages, treble damages, attorney's fees and costs of suit.

**WHEREFORE**, Plaintiff prays this Honorable Court enter judgment in his favor and against Defendant, and Order the following relief:

    a. Actual damages;

    b. Treble damages;

    c. An award of reasonable attorneys fees and expenses and costs of court; and

    d. Such additional relief as is deemed just and proper, or that the interests of justice require.

## COUNT III

## VIOLATIONS OF PENNSYLVANIA CONSUMER PROTECTION LAW ("UTPCPL"), 73 Pa. C.S. § 201-1 et seq.

67. The foregoing paragraphs are incorporated herein by reference.

68. Plaintiff and Defendant are "Persons" to 73 Pa. C.S § 201-2.

69. The UTPCPL proscribes, inter alia, engaging in any "unfair or deceptive acts or practices", either at, and prior to or subsequent to a consumer transaction.

70. The action of Defendant, as aforesaid, constitutes unfair acts or practices under the UTPCPL, by way of the following, inter alia:

a. Defendant misrepresented to Plaintiff the character, extent or amount of the debt or its status in a legal proceeding, 73 Pa. C.S. § 201-3.1;

b. Defendant engaged in deceptive or fraudulent conduct which created a likelihood of confusion or of misunderstanding, 73 Pa. C.S. § 201-2(xxi);

c. Defendant failed to comply with the FDCPA and FCEUA which are per se violations of the UTPCPL.

71. As a direct and proximate result of the said actions, Plaintiff has suffered financial damages and other harm.

72. By virtue of the violations of law aforesaid and pursuant to the UTPCPL, Plaintiff is entitled to an award of actual damages, treble damages, attorney's fees and costs of suit.

**WHEREFORE** Plaintiff prays this Honorable Court enter judgment in his favor and against Defendant, and Order the following relief:

a.   An Order declaring that Defendant violated the UTPCPL;

b.   Actual damages;

c.   Treble damages;

d.   An award of reasonable attorney's fees and expenses and cost of suit; and

e.   Such additional relief as is deemed just and proper, or that the interest of justice may require.

## V.   JURY DEMAND

Plaintiff hereby demands a jury trial as to all issues herein.

**Respectfully submitted,**

**WARREN & VULLINGS, LLP**

Date: September 23, 2010

BY: */s/ Bruce K. Warren BKW4066*
Bruce K. Warren, Esquire
BY: */s/ Brent F. Vullings BFV8435*
Brent F. Vullings, Esquire

Warren & Vullings, LLP
1603 Rhawn Street
Philadelphia, PA 19111
215-745-9800   Fax 215-745-7880
Attorney for Plaintiff